**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.  4:17-CR-297 AGF/PLC** |
| | ) | |
| **DEVON N. GOLDING, REUBEN F.** | ) | |
| **GOODWIN, PHILLIP L. JONES,** | ) | |
| **DWIGHT MCTIZIC, NICOLE MCTIZIC,** | ) | |
| **KAZIM A. MEO, and REHAN RANA,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER and REPORT AND RECOMMENDATION

This matter is before the Court on the motions of Defendants Devon N. Golding, Reuben F. Goodwin, Phillip L. Jones, Dwight McTizic, Nicole McTizic, Kazim A. Meo, and Rehan Rana.[1] Rana and Golding move to dismiss the indictment [ECF Nos. 139 and 199, respectively]. Rana moves for a bill of particulars [ECF No. 140].[2] Rana, Golding, D. McTizic, K. Meo and Jones move for early disclosure or production of Jencks Act materials [ECF Nos. 142, 200, 264, 267, and 301, respectively]. Rana, Golding, and K. Meo move to compel production of statements of non-cooperating witnesses [ECF Nos. 142, 200 and 267, respectively]. Rana, Goodwin, Golding, N. McTizic, D. McTizic, K. Meo and Jones move to sever, variously, counts and individual Defendants [ECF Nos. 141, 186, 198, 257, 263, 266 and 299]. With the exception of D. McTizic, N. McTizic, and Jones, all Defendants appeared with their attorneys and argued their motions.[3]

---

[1]  This matter is before the undersigned U.S. Magistrate Judge pursuant to 28 U.S.C. Section 636(b).
[2]  Goodwin withdrew his motion for a bill of particulars [ECF No. 185] at his hearing.
[3]  N. McTizic and D. McTizic each requested to waive appearance at their motion hearings and only their attorneys appeared.  Jones appeared pro se with standby counsel present during his motion hearing.

## I.    <u>Background</u>

The Government charged ten Defendants in thirty-one counts with two conspiracies, four health care fraud schemes, and related substantive offenses occurring between 2009 and 2016 with respect to specimen-testing by three different medical laboratories: Allegiance Medical Services, LTD ("Allegiance"), AMS Medical Laboratory, Inc. ("AMS") and Western Slope Laboratory, LLC ("Western Slope").  The charges arise out of Defendants' alleged agreement to engage in criminal conduct and Defendants' alleged engagement in, or aiding and abetting of, criminal conduct. The Government asserted that Defendants: (1) solicited, referred, and received blood, urine, and other medical specimens through the receipt or payment of illegal kickbacks for the referral or receipt of the specimens for testing; (2) submitted claims to Medicare and Medicaid programs for reimbursements related to the testing of specimens, which claims were fraudulent in that they pertained to:  (a) specimens referred or obtained unlawfully through the receipt or payment of kickbacks; (b) testing by a laboratory owned or operated by a person excluded from participation in a Medicare or Medicaid program; or (c) testing by a laboratory that did not actually perform the testing; and (3) submitted on one occasion in November 2012 false statements to the United States Department of Health and Human Services ("HHS") regarding the extent and duration of an unindicted co-conspirator's (Azeem Meo's) participation in the management and operation of Allegiance. [4]

More specifically, in Counts 1 – 6, the Government charged that, with respect to testing by Allegiance, from 2009 until 2012:  Anthony B. Camillo,[5] Golding, Rana, and K. Meo conspired to commit health care fraud and provide or receive illegal kickbacks in violation of 18 U.S.C. §§ 371 and 2 (Count 1); K. Meo submitted false statements to HHS in violation of 18

---

[4] The Court granted the Government's unopposed motion to designate this case as a complex case for purposes of the Speedy Trial Act, 18 U.S.C. § 3161 <u>et seq</u>.

[5]  Camillo pleaded guilty to three of the thirty counts against him.

2

## I.    <u>Background</u>

The Government charged ten Defendants in thirty-one counts with two conspiracies, four health care fraud schemes, and related substantive offenses occurring between 2009 and 2016 with respect to specimen-testing by three different medical laboratories: Allegiance Medical Services, LTD ("Allegiance"), AMS Medical Laboratory, Inc. ("AMS") and Western Slope Laboratory, LLC ("Western Slope").  The charges arise out of Defendants' alleged agreement to engage in criminal conduct and Defendants' alleged engagement in, or aiding and abetting of, criminal conduct. The Government asserted that Defendants: (1) solicited, referred, and received blood, urine, and other medical specimens through the receipt or payment of illegal kickbacks for the referral or receipt of the specimens for testing; (2) submitted claims to Medicare and Medicaid programs for reimbursements related to the testing of specimens, which claims were fraudulent in that they pertained to:  (a) specimens referred or obtained unlawfully through the receipt or payment of kickbacks; (b) testing by a laboratory owned or operated by a person excluded from participation in a Medicare or Medicaid program; or (c) testing by a laboratory that did not actually perform the testing; and (3) submitted on one occasion in November 2012 false statements to the United States Department of Health and Human Services ("HHS") regarding the extent and duration of an unindicted co-conspirator's (Azeem Meo's) participation in the management and operation of Allegiance. [4]

More specifically, in Counts 1 – 6, the Government charged that, with respect to testing by Allegiance, from 2009 until 2012:  Anthony B. Camillo,[5] Golding, Rana, and K. Meo conspired to commit health care fraud and provide or receive illegal kickbacks in violation of 18 U.S.C. §§ 371 and 2 (Count 1); K. Meo submitted false statements to HHS in violation of 18

---

[4] The Court granted the Government's unopposed motion to designate this case as a complex case for purposes of the Speedy Trial Act, 18 U.S.C. § 3161 <u>et seq</u>.

[5]  Camillo pleaded guilty to three of the thirty counts against him.

U.S.C. §§ 1001 and 2 (Count 2); and Camillo, Golding, Rana, and K. Meo committed health care fraud in violation of 18 U.S.C. §§ 1347(a) and 2 (Counts 3 – 6).

In Counts 7 - 24, the Government charged that, with respect to testing by AMS between 2012 and 2016: AMS, Camillo, Goodwin, Jones, D. McTizic, N. McTizic, and Robert J. Sommerfeld[6] conspired to commit health care fraud and to pay or receive kickbacks in violation of 18 U.S.C. §§ 371 and 2 (Count 7); AMS and Camillo paid illegal kickbacks to obtain medical specimens for testing by AMS in violation of 42 U.S.C. §§ 1320a-7b(b)(2)(B) and 2 (Counts 8 - 13); and AMS, Camillo, Goodwin, Jones, the McTizics, and Sommerfeld committed health care fraud in violation of 18 U.S.C. §§ 1347(1)(2) and 2 (Counts 14 – 24).

In Counts 25-31, the Government charged AMS and Camillo with engaging in two health care fraud schemes in violation of 18 U.S.C. §§ 1347(a)(2) and 2 related to testing of medical specimens by Western Slope's testing of medical specimens in 2013 and 2014.

## II.     Discussion

### A.  Sufficiency of the Indictment

A sufficient indictment must contain a plain, concise and definite statement of all essential elements of each offense charged; it must fairly inform each defendant of the charge against which he or she must defend; and it must allege information adequate to allow a defendant to plead a conviction or an acquittal as a bar to a future prosecution for the same offense.  See U. S. Const. amends V and VI; Fed. R. Crim. P. 7(c)(1); Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. White, 241 F.3d 1015, 1021 (8th Cir. 2001).  "The test for sufficiency of the indictment is not whether it could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards."  United States v. Awad,

---

[6]  Sommerfeld pleaded guilty to two of the twelve counts against him.

551 F.3d 930, 935 (9th Cir. 2009) (internal quotation marks and citation omitted). An indictment is ordinarily sufficient "unless it is so defective that [it cannot be said] by [any] reasonable construction . . . to charge the offense." United States v. Young, 618 F.2d 1281, 1286 (8th Cir. 1980) (internal quotation marks and citations omitted).

"An indictment should not be read in a hyper[-]technical fashion and should be 'deemed sufficient unless no reasonable construction can be said to charge the offense.'" United States v. O'Hagan, 139 F.3d 641, 651 (8th Cir. 1998) (citation omitted). In addition, when a defendant challenges an indictment on a motion to dismiss, the court must accept as true the government's allegations. United States v. Birbragher, 603 F.3d 478, 481 (8th Cir. 2010) (citing United States v. Farm & Homes Sav. Ass'n, 932 F.2d 1256, 1259 n.3 (8th Cir. 1991) ("in considering a motion to dismiss an indictment, we accept the government's allegations as true, without reference to allegations outside the indicting document" (internal quotation marks and citation omitted)).

In Count 1, the Government charged Rana and Golding (along with others) with violating 18 U.S.C. § 371 between 2009 and 2012. Section 371 provides, in pertinent part, that:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years or both.

18 U.S.C. § 371. "The essential elements of a section 371 conspiracy crime are that: (1) the defendants agreed with another, (2) to commit crimes against the United States or violate the laws of the United States, and (3) at least one overt act was committed in furtherance of the agreement." United States v. Hayes, 574 F.3d 460, 472 (8th Cir. 2009). With respect to a conspiracy charge, an indictment is sufficient where it:

> tracks the language of the conspiracy statute, identifies the federal criminal laws that are the subjects of the conspiracy, alleges each of the essential elements of

the crime of conspiracy, states the nature of the fraudulent scheme that was the subject of the conspiracy, specifies the approximate time period during which the conspiracy took place, states the place from which the scheme was allegedly operated, and specifies overt acts that furthered the conspiracy….

Id. at 473.

In Counts 3 - 6, the Government charges Rana and Golding (along with others) with violating 18 U.S.C. § 1347(a).  Section 1347(a) penalizes health care fraud, which is committed by anyone who:

knowingly and willfully executes, or attempts to execute, a scheme or artifice - - (1) to defraud any healthcare benefit program; or (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under  the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items or services.

18 U.S.C. § 1347(a); United States v. Boesen, 491 F.3d 852, 856 (8th Cir. 2007).  "The intent to defraud 'need not be shown by direct evidence; it may be inferred from all facts and circumstances surrounding the defendants' actions.'"  Boesen, 491 F.3d at 857 (quoting United States v. Wrehe, 628 F.2d 1079, 1082 (8th Cir. 1980)).

## 1.  Rana's motion to dismiss

Rana contends that the allegations of the indictment are insufficient to state an offense against him.  More specifically, Rana argues that Counts 3 - 6 are defective because they lack a description of his "specific action to aid the health care scheme" and fail to allege that he had the "requisite knowledge and intent to aid the alleged scheme."  Rana further argues that Count 1 fails to allege facts showing Rana's requisite knowledge to join a conspiracy to engage in a health care fraud scheme.  In short, according to Rana, "the Indictment fails to state any potentially illegal conduct engaged in by Rana."

The Government contends, in response, that the indictment "tracks the statutory language

and includes all essential elements" of the charged offense.  Specifically, the Government states that Counts 3 - 6 incorporate by reference paragraphs 1 - 20 of the indictment,  setting out the relevant statutory and regulatory sections and, paragraphs 24 - 49, setting out the "manner and means" of  Rana's violation of the statutes.

The Government further states that paragraphs 56 - 63 describe the material facts concealed from Medicare.  Paragraph 64 sets out the following:

> On or about the dates listed below, in the Eastern District of Missouri, Anthony B. Camillo, Devon N. Golding, M.D., Rehan Rana and Kazim A. Meo, the defendants herein, knowingly and willfully executed and attempted to execute a scheme and artifice to defraud a health care benefit program, in connection with the delivery and payment for health care benefits, items, and services, that is, the defendants submitted reimbursement claims to Medicare, a federal health benefit program, for services provided by Allegiance, when the defendants knew that Medicare would not pay for services obtained by illegal kickbacks and performed by a laboratory managed and controlled by an excluded person.

Paragraph 64 also identifies the date of claim, patient (by initials), and doctor relevant to Counts 3-6.

In addition to the extensive and specific factual allegations directed to all the co-conspirators, the Government ties specific "overt acts" to Rana.   In Paragraph 51, the Government alleges that Rana participated in a meeting with unindicted co-conspirator A. Meo in which the participants, including Rana, discussed payments to doctors for sending specimens to Allegiance.  Rana's involvement is also detailed in Paragraph 52.

Rana appears to concede that the Government sufficiently stated the essential elements of the offenses charged in Courts 1 and 3 - 6.  Significantly, Rana and the Government rely on the same case, United States v. Refert, 519 F.3d 752, 758 (8th Cir. 2008), as a guide to the elements of a "Section 1347 health care fraud offense."   Comparing Section 1347's provisions, as described above, to the allegations in the indictment, the Court concludes that the Government

sufficiently identifies the essential elements of the charged offenses.

The Government contends that the bulk of Rana's argument for dismissal is an attack on the sufficiency of the evidence. Indeed, Rana states that his "mere involvement" or association with people "alleged to have committed health care fraud" is "insufficient to establish culpability for aiding and abetting the scheme under 18 U.S.C. § 2." Rana further argues that no facts demonstrate he had the requisite knowledge or intent to engage in a conspiracy.

In support of his argument, Rana relies primarily on United States v. Rufai, a Tenth Circuit decision addressing the sufficiency of evidence in a health care fraud case charged under 18 U.S.C. § 1349, § 1347 and § 2. 732 F.3d 1175 (10th Cir. 2013). In Rufai, the Tenth Circuit did not consider the sufficiency of the indictment. Rather, the defendant argued "there was insufficient evidence to establish beyond a reasonable doubt that he knowingly involved himself in the scheme to defraud Medicare." Id. at 1192. At this pretrial juncture, the Court does not review the sufficiency of the evidence. To be more precise, "[c]hallenging an indictment is not a means of testing the strength or weakness of the government's case, or the sufficiency of the government's evidence." United States v. Todd, 446 F.3d 1062, 1067 (10th Cir. 2006); see also United States v. Ferro, 252 F.3d 964, 967-68 (8th Cir. 2001).

The Government has stated the essential elements of the offenses charged in Counts 1 and 3 – 6, and alleged sufficient facts to permit Rana to defend against the charges. Although, Rana has devoted considerable energy to casting doubt on the merit of the Government's case against him, the Court must accept the Government's allegations as true. Birbragher, 603 F.3d at 481. Rana has not presented a persuasive argument that demonstrates that no reasonable construction of the indictment can be said to charge the offenses in Counts 1 and 3 - 6. Accordingly, the Court recommends denial of Rana's motion.

## 2. __Golding's Motion to dismiss__

Golding contends that the allegations of the indictment do not state an offense against him. More specifically, Golding asserts that "[t]he Indictment alleges very few facts regarding the illegal conduct Golding is alleged to have engaged in, and the facts alleged cannot support the required elements of the charged crimes." The Government counters that the indictment "substantially tracks the language of the offenses, alleges the essential elements of the charged offenses, and provides sufficient facts for Golding to prepare his defense and to use a conviction or acquittal as a bar to future prosecution."

At the heart of Golding's motion is the contention that the Government fails to allege that Golding "took any specific action to aid Allegiance's alleged healthcare fraud scheme . . . ." Rather, Golding contends, the indictment simply asserts his "mere involvement in a business that is alleged to have committed healthcare fraud, and/or association with people who are alleged to have done so…."

In support of his argument, Golding, like Rana, relies on Rufai, supra. As discussed above, Rufai concerns sufficiency of evidence to support a conviction following trial. Rufai does not articulate standards for the sufficiency of factual allegations in an indictment.

With respect to the conspiracy count (Count 1), the Government asserts that Paragraph 22 states that Golding, along with others, "willfully and knowingly did conspire, confederate, and agree together, and with each other to defraud the United States…." The indictment further identifies the type of fraud involved in Paragraphs 22(a), 22(b) and 22(c), the time frame of the conspiracy, the purpose of the conspiracy in Paragraphs 24 - 49 and various overt acts in Paragraphs 50 - 55. In particular, with regard to Golding, the indictment describes specific actions in Paragraph 45:

> From in or about January 2010 to in or about April 2012, Dr. Golding solicited and received payments in return for sending laboratory specimens to Allegiance. Some of the payments to Dr. Golding were made by checks signed by Camillo and Kazim Meo. When Dr. Golding did not receive the promised or requested payments, he stopped sending specimens to Allegiance.

The context for the specific allegations regarding Golding appears in Paragraph 44: "It was further part of the conspiracy that the defendants offered and paid doctors, directly or through their businesses, for the referrals that the doctors made to Allegiance."

Golding also asserts that the indictment is defective because no facts show he "had the requisite knowledge and intent to join a conspiracy or engage in a health care fraud scheme." Golding's assertion betrays a misunderstanding of the Government's obligations with respect to the indictment. Where intent is an element of a fraud claim, as here, using language such as "willfully and knowingly" throughout the charging document is sufficient. More specifically, where, as here in Paragraph 64, the indictment expressly charges that a defendant willfully executes a fraudulent scheme, the indictment provides notice of the requisite intent. See United States v. Perry, 757 F.3d 166, 173 (4th Cir. 2014). Moreover, "[t]he intent to defraud 'need not be shown by direct evidence; it may be inferred from all facts and circumstances surrounding the defendants' actions.'" Boesen, 491 F.3d at 857 (quoting Wrehe, 628 F.2d at 1082).

As the Seventh Circuit has held when considering a similar argument, "we do not believe that it is necessary for an indictment to allege in detail the factual proof that will be relied on to support the charges." United States v. Smith, 230 F.3d 300, 306 (7th Cir. 2000); see also United States v. Doe, 572 F.3d 1162, 1173-74 (10th Cir. 2009) ("[W]here the indictment quotes the language of a statute and includes the date, place, and nature of the illegal activity, it need not go further and allege in detail the factual proof that will be relied upon to support the charges" (internal quotation marks and citation omitted)). Likewise, as the Eighth Circuit has stated,

"[n]owhere . . . is a defendant guaranteed the right to an indictment including a full and accurate factual account of the alleged crime." United States v. Morales, 813 F.3d 1058, 1067 (8th Cir. 2016). The detailed indictment here provides Golding with the necessary information to apprise him of the nature of crimes with which he is charged. Accordingly, the Court recommends denial of Golding's motion to dismiss.

### 3. Rana's motion for a bill of particulars.

Rana requests that, in the event the Court denies his motion to dismiss the indictment, the Court order the Government to produce a bill of particulars, pursuant to Federal Rule of Criminal Procedure 7(f), with respect to Counts 1 and 3 - 6. As grounds for his motion, Rana asserts that few "overt acts" in the indictment refer to him. More specifically, Rana contends that the indictment "fails to allege, or to indicate that there is any proof," that he: (1) knew of "marketing payments" that violated the federal Anti-Kickback Act, 42 U.S.C. § 1320a-7b(b); (2) knew that A. Meo was an "excluded person"; (3) knew of illegal activity occurring at Allegiance; or (4) joined in the alleged "healthcare fraud scheme" or aided and abetted such scheme. To remedy the absence of the above information, Rana requests a bill of particulars that identifies: (1) his specific acts intended to further the conspiracy; (2) specific facts supporting an inference of his knowledge that marketing payments violated the Anti-Kickback Act; (3) specific facts supporting an inference that he knew A. Meo was an excluded person; (4) payments he made or received for services in violation of the Anti-Kickback Act, as well as details related to the payments; and (5) specific dates and locations of his allegedly unlawful acts.

The Government views Rana's motion as a "poorly disguised attempt to use a bill of particulars as an improper discovery device." Noting that a bill of particulars is intended to prevent unfair surprise, the Government argues that the sixteen-pages of the indictment that

constitute Counts 1 and 3 – 6 leave "no doubt as to the nature of the charges against Rana."

The primary purpose of a bill of particulars is to apprise "the defendant of the nature of the charges against him and to prevent or minimize the element of surprise at trial." United States v. Wessels, 12 F.3d 746, 750 (8th Cir. 1993). A bill of particulars is not intended to provide discovery or detailed disclosure of the government's evidence at trial. United States v. Lundstrom, 880 F.3d 423, 439 (8th Cir. 2018). See also United States v. Huggans, 650 F.3d 1210, 1220 (8th Cir. 2011) ("[A] bill of particulars is not a discovery device to be used to require the government to provide a detailed disclosure of the evidence that it will present at trial." (citation omitted)). More specifically, "the defendant's constitutional right is to know the offense with which he is charged, not to know the details of how it will be proved." United States v. Fassnacht, 332 F.3d 440, 446 (7th Cir. 2003) (internal quotation marks and citation omitted). If information regarding the specific charge is available from other sources, such as hearings and discovery provided by the government, the need for a bill of particulars is eliminated. See e.g. United States v. Hernandez, 299 F.3d 984, 989-90 (8th Cir. 2002).

Rana's argument that a bill of particulars is required because "few overt acts" refer to him is unavailing. There is no dispute that the indictment contains six paragraphs under the caption "overt acts." Rana is specifically named in Paragraphs 51 and 52. In any event, the Eighth Circuit has long-held that a defendant is not "entitled to be informed before trial of every overt act in furtherance of the conspiracy which the government intended to prove." United States v. Sellers, 603 F.2d 53, 57 (8th Cir. 1979) (affirming denial of a defendant's motion for bill of particulars), vacated on other grounds, 447 U.S. 932 (1980) (sentencing only), aff'd in all other respects, 628 F.2d 1085 (8th Cir. 1980); accord United States v. Giese, 597 F.2d 1170, 1181 (9th Cir. 1979) ("there is no requirement in conspiracy cases that the government disclose even

all the overt acts in furtherance of the conspiracy"); United States v. Murray, 527 F.2d 401, 411 (5th Cir. 1976) ("there is no general requirement that the government disclose in a bill of particulars all the overt acts it will prove in establishing a conspiracy charge"). In the context of a complex Medicare fraud case, where the government provides considerable discovery, which Rana does not dispute happened here, "disclosure of the overt acts" through a bill of particulars is not "necessary." United States v. Anderson, 31 F.Supp.2d 933, 938 (D. Kan. 1998).

In support of his argument that he is entitled to detailed facts underlying the Government's allegations in the indictment, Rana relies on United States v. Vazquez-Ruiz, 136 F.Supp. 2d 941 (N.D. Ill. 2001). Vazquez-Ruiz is of little assistance here. In Vazquez-Ruiz, the court acknowledged that "most of defendant's requests go beyond what is necessary and appropriate." Id. at 943. However, the court concluded that defendant was entitled "to know prior to trial certain basic matters." Id. Here the indictment supplies a significant amount of detail – certainly exceeding "basic matters" -- over the course of the sixteen pages and sixty-four paragraphs that constitute Counts 1 and 3 – 6. In addition, the Government has, by Rana's own assessment, "provided a large amount of discovery." Rana has not claimed that the Government is withholding discovery, but rather asserts only that proof of his knowledge of an illegal scheme or conspiracy is lacking.

The Government provided the names of the unindicted co-conspirators, specific overt acts, a specific time frame in which the conspiracy and health care fraud scheme allegedly involving Rana occurred, and a listing of false claims submitted to Medicare. As the Eighth Circuit has held, "[a] bill of particulars . . . is not a proper tool for discovery; it is not to be used to provide detailed disclosure of the government's evidence at trial." Wessels, 12 F.3d at 750; accord Lundstrom, 880 F.3d at 439. The Court concludes the Government has adequately

apprised Rana of the nature of the charges such that the element of surprise is prevented or minimized. Accordingly, the Court recommends denial of the motion for a bill of particulars.

## B. Pretrial disclosure or production of materials

### 1. Motions for Jencks Act material

Rana, Golding, K. Meo, D. McTizic and Jones move for early disclosure of Jencks Act material at least fourteen (14) days prior to the testimony of each Government witness. The Government opposes Defendants' motions but agrees to provide Jencks Act material "no later than Friday before the trial, if [Defendants] agree[] to do the same."[7]

The Jencks Act provides in relevant part:

(a)     In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

(b)     After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

18 U.S.C. § 3500. "Although in many cases the government freely discloses Jencks Act material to the defense in advance of trial, the government may not be required to do so." United States v. White, 750 F.2d 726, 729 (8th Cir. 1984); accord United States v. Green, 151 F.3d 1111, 1115 (8th Cir. 1998); United States v. Wilson, 102 F.3d 968, 971-72 (8th Cir. 1996). Accordingly, the Court denies the motions for early production of Jencks Act material.

---

[7] At Jones' hearing, the Government offered to provide Jones with Jencks Act material seven days before trial. He agreed to the Government's offer.

## 2. **Motions to compel production of statements of non-cooperating witnesses**

Rana, K. Meo, and Golding move to compel prompt production of statements of non-cooperating witnesses, specifically co-Defendants who initially cooperated with the Government and are no longer cooperating. Defendants further state that "the Government appears to have received undisclosed inculpatory statements from one or more of Defendant[s'] co-defendants." Defendants also assert "[t]he discovery produced by the Government in this case appears to be missing a number of statements and reports that counsel for Defendant[s] . . . would ordinarily expect to exist based on a co-defendant's prior cooperation with the Government's investigation." Defendants note the Jencks Act proscribes early disclosure of statements made by "a Government witness or prospective Government witness," 18 U.S.C. § 3500(a), and argue that a non-cooperating co-Defendant is neither "a Government witness" nor a "prospective Government witness." Additionally, Rana, K. Meo, and Golding urge, the introduction of a non-testifying co-defendant's "incriminating extrajudicial statements" is a violation of a defendant's right to cross-examination under the Sixth Amendment's Confrontation Clause as enunciated by Bruton v. United States, 391 U.S. 123, 126 (1968).[8] Defendants argue their right to a fair trial is violated by a failure promptly to disclose prior to trial statements made to the Government by non-cooperating co-Defendants.

The Government responds that it plans to disclose Jencks Act material the Friday prior to trial. Additionally, to the extent any statements of prospective witnesses contain Brady/Giglio[9]

---

[8] In Bruton, the United States Supreme Court held that the introduction in a joint trial of a non-testifying co-defendant's extrajudicial statement that incriminated another defendant violated the defendant's right to cross-examination under the Confrontation Clause, despite limiting instructions given by the trial court. Bruton, 391 U.S. at 126, 135-37. Bruton does not apply, however, when the co-defendant's extrajudicial "statements do not incriminate the defendant, either on their face or when considered with other evidence." United States v. Ali, 799 F.3d 1008, 1025 (8th Cir. 2015) (internal quotation marks and citation omitted).

[9] In Brady v. Maryland, the United States Supreme Court held that due process requires the government to provide a defendant evidence in the government's possession that is favorable to the defendant and material to either guilt

information, "the Government will disclose the <u>Brady/Giglio</u> information earlier than the Friday before trial and sufficiently in advance of trial so that [Defendants] can make effective use of the information at trial."[10] The Government opposes the disclosure of "interview summaries or other internal documents related to the investigation of th[e] case," except as required by the Jencks Act and Federal Rule of Criminal Procedure 16(a)(2).

Defendants' requests are prompted by alleged missing statements and reports that are "ordinarily expect[ed] to exist" as a result of a co-defendant's prior cooperation with the Government's investigation. Nothing of record at this time, however, conveys sufficient information to discern (1) what "missing statements" by a non-cooperating co-Defendant may exist for either disclosure or production by the Government or (2) how such a missing statement may fall within either <u>Brady/Giglio</u> or the Jencks Act disclosures. In light of Defendants' lack of specificity and the Government's willingness to disclose "<u>Brady/Giglio</u>" and Jencks Act material prior to trial, the Court denies Defendants' motions to compel the Government to produce statements of non-cooperating witnesses.

## C. Severance

First, pursuant to Federal Rule of Criminal Procedure 14(a), Golding, Rana, K. Meo, Goodwin, Jones, D. McTizic, and N. McTizic move to sever Counts 1 - 6 (Golding, Rana, and K. Meo) from Counts 7 - 24 (Goodwin, Jones, D. McTizic, and N. McTizic). Defendants also request severance of their trials from the trial on Counts 25 – 31 (AMS only). Defendants base their severance requests on the grounds of improper joinder under Federal Rule of Criminal

---

and/or punishment. 373 U.S. 83, 87 (1963). However, disclosure under <u>Brady</u> is not a rule of discovery but a "rule of fairness and minimum prosecutorial obligation." <u>United States v. Miller</u>, 698 F.3d 699, 704 (8th Cir. 2012) (internal quotation marks and citations omitted). In addition, <u>Brady</u> and <u>Giglio v. United States</u>, 405 U.S. 150 (1972) disclosure requires a "preliminary showing" that the requested information is exculpatory. <u>See</u> also <u>United States v. Pendleton</u>, 832 F.3d 934, 940 (8th Cir. 2016) ("The Government has no duty [under <u>Brady</u>] to disclose evidence that is neutral, speculative, or inculpatory, or evidence that is available to the defense from other sources.")
[10] The Government's position is consistent with United States District Judge Fleissig's Order setting Forth Trial Procedures in Criminal Cases, Paragraph 6 "Witness Lists."

Procedure 8(b).  The Government consents to this proposed severance.

Second, Golding, Rana, Goodwin, Jones, D. McTizic, and N. McTizic seek further severance of counts based on an argument that they should not be tried on any count in which they are not named.  The Government opposes this proposed severance of counts on the ground that Defendants may be "found criminally liable for" the substantive offenses that "were in furtherance of the conspiracy" with which Defendants were charged, even if they are not named in the counts charging the related substantive offenses, quoting United States v. Jenkins-Watts, 574 F.3d 950, 959 (8th Cir. 2009) (internal quotation marks and citation omitted).

Third, Goodwin and Jones move to further sever their trial on Counts 7 – 24 from the McTizics due to improper joinder under Rule 8(b).  Likewise, the McTizics seek severance of their trial on Counts 7 – 24 from Goodwin and Jones due to improper joinder under Rule 8(b). Both Goodwin and Jones and the McTizics argue that neither group had any knowledge of or interaction, communication, or "connection with" the other, despite independently working with Camillo for testing of their specimens by AMS.  The Government counters that the joinder prerequisites of Rule 8(b) are liberally construed and properly applied here, even though not all Defendants are charged in each count or known to each other.

Fourth, Goodwin and Jones, and the McTizics request separate joint trials on Counts 7 – 24  on the grounds that a group trial would:  (1) violate their rights under the Confrontation Clause, citing Bruton, supra; and (2) expose them to the possibility of a "mutually antagonistic defense" relating to the extent of their participation in the charged conduct.

Fifth, Golding, Rana, and K. Meo request individual trials on Counts 1 – 6 for the same (1) Bruton and (2) mutually-antagonistic-defenses arguments presented by Goodwin and Jones and the McTizics.  Golding, Rana, and K. Meo further urge they should be tried individually

because their joint trial would also: (3) require defense attorneys to comment on a co-defendant's failure to testify; and (4) result in "spillover evidence" which the jury will be unable to compartmentalize.

The Government rejects further severance with respect to either Counts 7 – 24 or 1 – 6 because: (1) <u>Bruton</u> issues are not ripe for resolution; (2) Defendants are improperly relying on speculation and blame-shifting to support their mutually-antagonistic-defenses argument; and (3) the jury will be able to compartmentalize the evidence in the trial of Counts 1 - 6. The Government has not expressly responded to the argument regarding defense attorney commentary.

### 1. Legal standards

When a defendant moves to sever, a district court first determines whether joinder is proper under Rule 8 and then exercises its discretion to sever counts if the joinder appears to prejudice the defendant under Rule 14(a). <u>United States v. Reynolds</u>, 720 F.3d 665, 670 (8th Cir. 2013). A court liberally construes Rules 8 and 14 in favor of joinder. <u>Id.</u>

### a. Joinder under Rule 8(b)

"Where an indictment joins defendants as well as offenses, the propriety of joinder . . . is governed by Rule 8(b)." <u>United States v. Mann</u>, 701 F.3d 274, 289 (8th Cir. 2012) (citing <u>United States v. Jones</u>, 880 F.2d 55, 60-61 (8th Cir. 1989)). Rule 8(b) provides that an indictment may charge two or more defendants "if they alleged[ly] . . . participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count." "Generally, 'the same series of acts or transactions' means acts or transactions that are pursuant to a common plan or a common scheme." <u>United States v.</u>

Wadena, 152 F.3d 831, 848 (8th Cir. 1998). Importantly, "the prerequisites for joinder are liberally construed in favor of joinder." United States v. Morris, 723 F.3d 934, 941 (8th Cir. 2013) (internal quotation marks omitted) (quoting United States v. Liveoak, 377 F.3d 859, 864 (8th Cir. 2004)). The propriety of joinder must appear on the face of the indictment. Wadena, 152 F.3d at 848.

As the Eighth Circuit has noted, it is "permissible and also customary to join a conspiracy count with separate substantive counts." United States v. Graham, 548 F.2d 1302, 1310 (8th Cir. 1977) (citing Pegram v. United States, 361 F.2d 820, 821 (8th Cir. 1966) (per curiam)). In particular, joinder of a conspiracy and a substantive count is proper when a substantive charge against less than all the defendants is an "'overt act[]' listed in the conspiracy count" against all the defendants. Id. More generally, proper joinder exists "[w]here conduct upon which each of the counts is based is part of a factually related transaction or series of events in which all defendants participated, . . . although various offenses were distinct and defendants were not charged on each count." United States v. Leach, 429 F.2d 956, 960 (8th Cir. 1970).

Joinder is not proper, however, where the charges are "linked merely by common conspiracy members." Liveoak, 377 F.3d at 865. Rather, proper joinder requires allegations linking the charges "by an overall scheme in which each conspiracy member participated." Id. In Liveoak, the Eighth Circuit found proper the joinder of a defendant charged with "falsely submitting claims to Medicaid" and two doctors who "alleged[ly] schemed to defraud Medicare by falsely certifying patients as homebound." Id. at 864. The Eighth Circuit concluded joinder was proper because the charges were linked by both common conspiracy members and "an overall scheme in which each conspiracy member participated to fraudulently charge the government for health care costs." Id.

### b. Severance under Rule 14(a)

When joinder of offenses or defendants in an indictment "appears to prejudice a defendant or the government, [a] court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a)(1). "Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts." Zafiro v. United States, 506 U.S. 534, 541 (1993). A district court's severance decision is upheld absent a clear showing of abuse of discretion. United States v. Benton, Nos. 16-3861, 16-3862 and 16-3864, 2018 WL 2171232, at *9 (8th Cir. May 11, 2018) (internal quotation marks and citation omitted).

A district court may grant severance "only upon a showing of real prejudice to an individual defendant" if the defendant is jointly tried. United States v. Payton, 636 F.3d 1027, 1037 (8th Cir. 2011) (internal quotation marks omitted) (quoting United States v. Sandstrom, 594 F.3d 634, 644 (8th Cir. 2010)); accord United States v. Young, 753 F.3d 757, 777 (8th Cir. 2014) (a district court "may sever trials if it appears that compelling or severe prejudice will result to the defendant" in a joint trial). "To satisfy the real prejudice standard, a defendant [has a heavy burden to] show 'that [the defendant's] defense is irreconcilable with the defense of [a] co-defendant or that the jury will be unable to compartmentalize the evidence as it relates to separate defendants." Payton, 636 F.3d at 1037 (internal quotation marks omitted) (quoting Sandstrom, 594 F.3d at 644); accord Young, 753 F.3d at 777 (a "defendant carries a heavy burden in demonstrating that severance is mandated").

The Eighth Circuit cautions that "there is a strong presumption for [a] joint trial [of properly joined defendants], as it 'gives the jury the best perspective on all of the evidence and therefore increases the likelihood of a correct outcome.'" United States v. Flores, 362 F.3d 1030,

1039-40 (8th Cir. 2004) (quoting United States v. Darden, 70 F.3d 1507, 1528 (8th Cir. 1995));

accord United States v. Henley, 766 F.3d 893, 915 (8th Cir. 2014). The preference for joint trials is "especially compelling when the defendants are charged as co-conspirators." United States v. Anderson, 783 F.3d 727, 743 (8th Cir. 2015) (internal quotation marks and citation omitted). Importantly, it is rarely improper to try co-conspirators together, "especially where proof of the charges against each of the defendants is based on the same evidence and acts." United States v. Kime, 99 F.3d 870, 880 (8th Cir. 1996) (internal quotation marks and citation omitted).

**2. Severance of counts due to improper joinder: separate trials for Golding, Rana and K. Meo and Goodwin, Jones, D. McTizic, N. McTizic, N. McTizic, and AMS**

Golding, Rana, and K. Meo move to sever their trial on Counts 1 - 6 from the trial of Goodwin, Jones, and the McTizics on Counts 7 - 24 based on improper joinder. Golding, Rana, and K. Meo argue that the conduct charged in Counts 1 - 6 is distinct from the conduct in Counts 7 - 24 because it allegedly occurred between 2009 and late 2012 and is related to specimen-testing by Allegiance. On the other hand, Counts 7 – 24, involving Goodwin, Jones, and the McTizics, concern the period 2012 to 2016 and specimen-testing by AMS. Based on nearly identical reasoning, Goodwin, Jones, and the McTizics move to sever their trial on Counts 7 - 24 from the trial on Counts 1 – 6. Finally, Defendants further request severance of their trials from trial on Counts 25 – 31 due to improper joinder. Defendants contend Counts 25 – 31 only involve conduct of AMS with respect to the health care fraud schemes related to specimen-testing by Western Slope. The Government consents to these severance requests, and is therefore agreeing to: a trial of Golding, Rana, and K. Meo on Counts 1 – 6 and a trial of Goodwin, Jones, D. McTizic, N. McTizic, and AMS on Counts 7 – 24.[11]

---

[11] The Government also consents to a separate trial of AMS on Counts 25 – 31, if needed.

### 3. Severance of counts due to improper joinder: trials of Golding, Rana, Goodwin, Jones, D. McTizic, N. McTizic only on the counts in which they are named

Defendants seek further severance of counts arguing that they should not be tried on any count in which they are not named. More specifically, Golding and Rana seek severance of Count 2, in which only K. Meo is named, from trial of Counts 1 and 3 – 6 in which Golding, Rana, and K. Meo are named. Similarly, Goodwin, Jones, and the McTizics seek severance from their trial of trial on Counts 8 – 13 (in which only Camillo, who has pleaded guilty, and AMS are named) and on Counts 21 – 24 (in which Sommerfeld, who has pleaded guilty, is specifically named). Goodwin and Jones additionally request severance so that they are only tried on Counts 7 and 17 – 20, the counts in which Jones, who was supervised by Goodwin, is named.[12] Likewise, the McTizics ask for further severance so that they are only tried on Counts 7 and 14 – 16, the counts in which they or their business are named. Defendants do not cite case law expressly directed to this proposition.

The Government characterizes as "mistaken" Defendants' argument that they should not have a joint trial of substantive offenses on counts in which they are not named. The Government asserts that, to the contrary, Defendants may be "found criminally liable for" the substantive offenses that "were in furtherance of the conspiracy" with which Defendants were charged, even if they are not named in the counts charging the substantive offenses, citing Jenkins-Watts, 574 F.3d at 959. In support, the Government quotes Jenkins-Watts: "each member of a conspiracy may be held criminally liable for any substantive crime committed by a co-conspirator in the course and in furtherance of the conspiracy, even though those members

---

[12] During the hearing on Goodwin's motions, his attorney stated he would stipulate that Jones's conduct is "linked" to Goodwin's.

did not participate or agree to the specific criminal act." Id. at 959 (internal quotation marks omitted) (quoting United States v. Hayes, 391 F.3d 958, 962 (8th Cir. 2004)).

Joinder is not, however, dependent on a determination of criminal liability, but instead focuses on whether the allegations in the indictment link the charges "by an overall scheme in which each conspiracy member participated." See Liveoak, 377 F.3d at 865. With the unopposed severance of the conspiracy in Count 1 and its related offenses from the conspiracy in Count 7 and its related offenses, the Court finds proper the joinder for trial of all Defendants named in each conspiracy and the substantive offenses related to each of those conspiracies, even though each Defendant named in the relevant conspiracy count is not named in all substantive counts related to the conspiracy. The allegations pertaining to the conspiracy with which Golding, Rana, and Meo are charged in Count 1 support joinder of that conspiracy with the related substantive offenses in Counts 2 – 6 because Counts 2 – 6 are based on alleged conduct that is expressly mentioned in the allegations supporting the conspiracy in Count 1. Likewise, the allegations pertaining to the conspiracy with which Goodwin, Jones, and the McTizics are charged in Count 7 support joinder of that conspiracy with the related substantive offenses in Counts 14 – 24 because Counts 14 – 24 are based on alleged conduct that is expressly mentioned in the allegations supporting the conspiracy in Count 7. Liberally construing the joinder prerequisites of Rule 8(b), which provide for joinder even when the defendants are not charged in each count, in the context of a conspiracy and related substantive charges, the Court declines to recommend severance based on an argument that every count jointly-tried must name all conspirators.

### 4. **Severance of Defendants due to improper joinder: separate trials for AMS and Goodwin, Jones, and AMS and the McTizics**

Goodwin and Jones jointly and the McTizics request the Court to separate each group's trial on Counts 7 – 24 due to improper joinder. As grounds, both groups contend that the Government has not alleged that either group had any knowledge of or interaction, communication, or "connection with" the other. In addition, both groups argue that the fact that each independently worked with Camillo for testing of their specimens by AMS is an insufficient basis for joinder. Finally, both groups argue that the Government should try them only on the counts in which they are named (Counts 7 and 14 – 16 for the McTizics, and Counts 7 and 17 – 20 for Jones and Goodwin).

The Government counters that the joinder prerequisites of Rule 8(b) are liberally construed and properly applied here, even though not all Defendants are charged in each count or known to each other. More specifically, the Government asserts joinder is proper because these Defendants allegedly participated in a "sequence of connected events" at various points of the conspiracy and health care fraud scheme, citing <u>Liveoak</u>, 377 F.3d at 864.

To support their improper joinder argument, Goodwin, Jones, and the McTizics cite <u>United States v. Nevils</u>, 897 F.2d 300, 305 (8th Cir. 1990) and <u>United States v. Sanders</u>, 563 F.2d 379, 382 (8th Cir. 1977). These cases are not helpful to Defendants. In <u>Nevils</u>, four of the defendants who were charged with a drug distribution conspiracy and various related substantive offenses appealed the denial of their motions to sever. <u>Nevils</u>, 897 F.2d at 305. In relevant part, one defendant, who was located in California and shipped the narcotics from California to St. Louis, argued that his joinder with the St. Louis-area defendants "prevented [him] from calling other defendants who would have testified that they were unaware of his involvement." <u>Id.</u> n.3. The Eighth Circuit noted the prosecutor argued that the California defendant "shipped narcotics

to St. Louis which were received by" or at the direction of an individual who had moved to California from St. Louis, had been contacted by one of the St. Louis defendants to obtain narcotics in California, and had paid friends in St. Louis "to receive the packages." Id. The Eighth Circuit characterized the "prospective testimony" about the St. Louis-area defendants' unawareness of the California defendant as not "sufficiently exculpatory" and "of minimal significance." Id. Under the circumstances here, where the trial of Goodwin, Jones, and the McTizics relates only to the conspiracy and related substantive offenses with which they are charged, the fact Goodwin and Jones and the McTizics did not know each other is similarly of minimal significance given their alleged participation in the conspiracy in Count 7 and the related substantive offenses.

In Sanders, a district court rejected a pretrial motion for severance based upon improper joinder because the indictment alleged that the two defendants engaged in a single scheme. Sanders, 563 F.2d at 383. At trial, the government's evidence established "separate schemes" and the district court ordered severance of the counts against the co-defendant. Id. The Eighth Circuit affirmed the severance decisions. Sanders, supra. In relevant part, the Eighth Circuit concluded that the district court properly denied severance initially because "the indictment charged both defendants with devising and carrying out a single scheme to defraud, in furtherance of which they caused numerous mailings." Sanders, 563 F.2d at 383. This, the Eighth Circuit found, "was a sufficient allegation that the[ two defendants] 'participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses' to render the initial joinder proper." Id. Ultimately concluding that "the basis for joinder under Rule 8 might have been lacking," the Eighth Circuit stated "this was not apparent from the indictment." Id. at 384.

Here, the Government has consented to separate trials of Goodwin, Jones and the McTizics on Counts 7 - 24 and Golding, Rana, and K. Meo on Counts 1 - 6. That is, the Government has acknowledged two schemes (Counts 1 – 6 and Counts 7 – 24) and agreed to separate the trials on that basis. Sanders does not support further severance of Counts 7 – 24 so that Goodwin, Jones, and the McTizics are tried in two separate trials on those counts.

A review of the allegations in Counts 7 – 24 demonstrates Goodwin, Jones, and the McTizics are charged with participating between 2012 and 2016 in the submission of medical specimens to AMS for testing and the entry into sham agreements with Camillo or AMS to conceal their receipt of illegal kickbacks for referring specimens to AMS for testing. The substantive offenses charged in Counts 8 – 24 arise out of conduct described as the "manner and means of the conspiracy" charged in Count 7. The fact that co-conspirators do not know each other or were not aware of or involved in some of the transactions encompassed by the conspiracy is not fatal to a finding that a conspiracy existed. See, e.g., United States v. Burns, 276 F.3d 439, 444 (8th Cir. 2002). Therefore, the fact Goodwin and Jones were unaware of the McTizics and the McTizics did not know Goodwin and Jones is not fatal to their joinder. Nor is their joinder improper because neither group was aware of or participated in some of the transactions encompassed by the conspiracy, as well as the related substantive offenses. Liberally construing the prerequisites for joinder under Rule 8(b), and based on the allegations in Counts 7 – 24, Goodwin, Jones, and the McTizics are properly joined in those counts.

Neither Goodwin and Jones nor the McTizics provide a persuasive basis for further severing their trials. Based on the liberal construction of joinder prerequisites and the allegations in the indictment, the Court recommends denial of Goodwin, Jones, and the McTizics' motions to the extent they seek further severance of their joint trial on Counts 7 – 24 for improper joinder.

**5. Severance of Defendants due to prejudice: separate trials for Goodwin and Jones and the McTizics**

Goodwin and Jones seek severance of their joint trial on Counts 7 - 24 from the McTizics' trial, and the McTizics seek severance of their joint trial on Counts 7 – 24 from the trial of Goodwin and Jones, to prevent: (1) violation of their rights under the Confrontation Clause, citing Bruton; and (2) their exposure to "mutually antagonistic defenses" relating to the extent of their participation in the charged conduct. In opposition to these requests, the Government argues: (1) Bruton issues are not ripe for resolution; and (2) Goodwin, Jones and the McTizics are improperly relying on speculation and blame-shifting to support their mutually-antagonistic-defenses argument.

**a. Bruton issues**

Goodwin and Jones and the McTizics argue they should have two separate trials on Counts 7 – 24 because Bruton issues may arise if the Government introduces any extrajudicial statement made by a non-testifying co-defendant that incriminates one or more of the other jointly-tried defendants. While not identifying which co-Defendant's statements, if any, the Government might introduce at a joint trial, Defendants speculate that the Government plans to introduce incriminating extrajudicial statements made by Camillo and Jones.

The Government responds that it has not yet determined whether it will introduce co-defendants' statements. Additionally, the Government advises that, consistent with practice in this district, it intends to "file a motion in limine to obtain a determination of the admissibility of any out-of-court statement or category of statements" prior to trial.

Goodwin, Jones, and the McTizics concede that Bruton issues arise only if the Government chooses to introduce incriminating statements of a non-testifying co-defendant. At this time, neither the Government nor Defendants have identified such statements. Therefore,

Goodwin, Jones and the McTizics have failed to establish that the existence of <u>Bruton</u> issues requires that the Court separate trials on Counts 7 – 24 into two separate joint trials, one of Goodwin and Jones and the other of the McTizics.

### b. Mutually antagonistic defenses

Goodwin and Jones and the McTizics also contend that they require two separate trials on Counts 7 – 24 because of the possibility of mutually antagonistic defenses. More specifically, Defendants express concern that a defendant will minimize his role and exaggerate the responsibility of another defendant during a joint trial.

In support of this argument, Goodwin, Jones, and the McTizics rely on <u>Young</u>, <u>supra</u>, and <u>Hood v. Helling</u>, 141 F.3d 892 (8th Cir. 1998). In <u>Hood</u>, the Eighth Circuit defined "mutually antagonistic defenses [as] those which force the jury to disbelieve the core of one defense in order to believe the core of the other." <u>Hood</u>, 141 F.3d at 896. Relying on that definition, Defendants assert their proposed severance is required because "the jury may unjustifiably infer that the defendants' conflicting defenses alone demonstrate that [the jointly-tried] defendants are guilty." <u>Young</u>, 753 F.3d at 778.

The Government counters that Defendants' argument is based on speculation. In any event, the Government asserts, the existence of mutually antagonistic defenses is not *per se* prejudicial, noting that separate trials are not required where a jointly-tried defendant shifts blame to a co-defendant.

In support of its position, the Government cites <u>Zafiro</u>, <u>supra</u>, and <u>Flores</u>, 362 F.3d at 1039-40. In <u>Zafiro</u>, the United States Supreme Court declined to adopt "a bright-line rule, mandating severance whenever codefendants have conflicting defenses." <u>Zafiro</u>, 506 U.S. at 539. Rather, the Supreme Court concluded that Rule 14 does not require severance "even if

prejudice is shown" unless "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Id. Acknowledging that "[t]he risk of prejudice will vary with the facts in each case," the Supreme Court found a district court may conclude "separate trials are necessary" "[w]hen the risk of prejudice is high," but may often find "less drastic measures, such as limiting instructions . . . will suffice to cure any risk of prejudice." Id. Importantly, the Supreme Court noted, "it is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." Id. at 540; accord Young, 753 F.3d at 777. In Flores, the Eighth Circuit reiterated that "[m]utually antagonistic defenses exist when the jury must disbelieve the core of one defense in order to believe the core of the other." Flores, 362 F.3d at 1040 (citing Hood, 141 F.3d at 896).

The general description Goodwin, Jones, and the McTizics provide of their "mutually antagonistic" defenses (minimizing one Defendant's role and exaggerating another's) does not support severance. Here, Defendants' defenses, as they acknowledge, appear simply to shift blame from one defendant to a different defendant. Such blame-shifting is not alone a basis for severance. See, e.g., id. at 1039-40 ("[t]he mere fact that one defendant tries to shift blame to another defendant does not mandate separate trials" (internal quotation marks and citation omitted)). Thus, Goodwin, Jones, and the McTizics fail to demonstrate that "mutually antagonistic defenses" necessitate two separate trials on Counts 7-24.

### 6. Severance of Defendants due to prejudice: individual trials for Golding, Rana and K. Meo

Golding, Rana,[13] and K. Meo request individual trials on Counts 1 – 6 on the grounds that a joint trial: (1) violates their rights under the Confrontation Clause, citing Bruton, supra; (2)

---

[13] Camillo was a focus of Rana's oral argument on Rana's motion to sever, which was argued before Camillo's

exposes them to the possibility of a "mutually antagonistic defense" relating to the extent of their participation in the charged conduct; (3) requires that defense attorneys comment on a co-defendant's failure to testify, and (4) produces "spillover evidence" that the jury will be unable to compartmentalize for each Defendant. The Government opposes the motions and contends severance is not required because: (1) <u>Bruton</u> issues are not ripe for resolution; (2) Defendants are improperly relying on speculation and blame-shifting to support their mutually-antagonistic-defenses argument; and (3) the jury will be able to compartmentalize the evidence in these Defendants' trial, so the presence of either spillover or disparate evidence does not support severance.

### a. **Bruton** issues

Golding, Rana, and K. Meo argue that they are entitled to individual trials on Counts 1 – 6 because the Government might introduce incriminating extrajudicial statements of Camillo against them. The Government responds that it has not yet determined whether it will introduce any statement by a co-defendant. Additionally, the Government states that, consistent with practice in this district, it intends to "file a motion in limine to obtain a determination of the admissibility of any out-of-court statement or category of statements" prior to trial. Because, as these Defendants concede, <u>Bruton</u> issues arise only if the Government chooses to introduce incriminating statements of any non-testifying co-defendant, and neither the Government nor Defendants have identified such statements, the Court recommends denial of severance on this ground.

### b. **Mutually antagonistic defenses**

Golding, Rana, and K. Meo also request individual trials on Counts 1 - 6 because of the

---

guilty plea. In particular, the Government agreed there would be a <u>Bruton</u> issue if the Government introduced certain statements by Camillo incriminating other defendants and Camillo did not testify.

possibility of mutually antagonistic defenses in a joint trial. More specifically, each expresses the concern that a co-defendant will minimize his role and exaggerate the responsibility of another defendant. Like Goodwin, Jones, and the McTizics, Golding, Rana, and K. Meo rely on <u>Young</u>, <u>supra</u>, and <u>Hood</u>, <u>supra</u>. Citing <u>Zafiro</u>, <u>supra</u>, and <u>Flores</u>, <u>supra</u>, the Government counters that Defendants' argument is based on speculation. In any event, the Government asserts, the existence of mutually antagonistic defenses is not *per se* prejudicial, noting that separate trials are not required where a jointly-tried defendant merely shifts blame to a co-defendant.

As discussed in more detail above, Golding, Rana, and K. Meo's general description of their "mutually antagonistic" defenses (minimizing one Defendant's role and exaggerating another's) is not a sufficient basis for severance. Without more, Golding, Rana, and K. Meo have not satisfied their heavy burden to demonstrate that the possibility of mutually antagonistic defenses requires individual trials on Counts 1 – 6.

### c. Attorney's duty to comment about a non-testifying co-defendant

Golding, Rana, and K. Meo move for individual trials based on an attorney's duty to comment on another jointly-tried defendant's failure to testify. The Government does not expressly respond to this argument.

Defendants rely on <u>DeLuna v. United States</u>, 308 F.2d 140 (5th Cir. 1962). In <u>De Luna</u>, one of two defendants took the stand and "put all the blame on [his co-defendant]." <u>Id.</u> at 142. The Fifth Circuit characterized the co-defendant's attorney's explicit references to defendant's silence during trial as "not casual or isolated [but rather] integral to [the co-defendant]'s defense" and concluded that a district court judge has a "duty . . . to order that the defendants be tried separately" when "an attorney's duty to [a] client should require [the attorney] to draw the jury's

attention to the possible inference of guilt from a co-defendant's silence." Id. at 143, 141.

The Eighth Circuit considered the application of De Luna in United States v. Metz, 625 F.2d 775 (8th Cir. 1980). There, a co-defendant's attorney commented that defendants had "an absolute guaranteed right not to testify if that were their choosing . . . [and i]n spite of that right, [the two co-defendants] will testify, and . . . will explain their version of things that were said and done." Id. at 777. The Eighth Circuit rejected the defendant's argument that De Luna prohibited such comments, finding "no direct reference to [the defendant]'s decision not to testify." Id. at 777, 778. Characterizing the challenged remarks as "limited to the decision made by [the defendant]'s co-defendants to take the stand and subject themselves to cross-examination," the Eighth Circuit concluded that "[u]nder the circumstances, any prejudice which [the defendant] might have suffered is the product of inference, alone, and can in no way be compared to the direct statements of the co-defendant's counsel in De Luna." Id. at 778.

At this juncture, it is not clear whether (1) any jointly-tried Defendant will testify or (2) any defense counsel will have a duty to comment on another jointly-tried Defendant's failure to testify. Nor is it clear that any comment made by a co-Defendant's attorney will constitute a reference requiring application of De Luna. Therefore, the Court declines to recommend further severance of the joint Golding, Rana, and K. Meo trial into individual trials.

### d. "Spillover" evidence

Golding, Rana, and K. Meo contend that the possibility of "spillover" evidence requires individual trials on Counts 1 – 6. Golding, Rana, and K. Meo assert the indictment reveals a "sharp disparity" among Defendants whose alleged role "is peripheral, at most" and the other Defendants. Golding, Rana, and K. Meo argue that "the jury will not be able to isolate the evidence presented against each co-Defendant and make an independent determination of guilt

with respect to" them.

In support of their argument, Golding, Rana and K. Meo rely on United States v. Searing, 984 F.2d 960, 965 (8ᵗʰ Cir. 1993). In Searing, the Eighth Circuit held that disparity in the evidence warrants severance only if a defendant is prejudiced due to the jury's inability "to compartmentalize the evidence." Id. To assess "a jury's ability to compartmentalize the evidence against joint defendants," a court considers "the complexity of the case, whether any of the defendants were acquitted, and the adequacy of the jury instructions and admonitions to the jury." Ali, 799 F.3d at 1023 (internal quotation marks and citation omitted). [14]

Golding, Rana and K. Meo's trial on Counts 1 – 6 involves a four-year time frame and one conspiracy, one health care fraud scheme, and the submission of false statements to a federal agency on one occasion. Defendants have not articulated a persuasive basis for concluding that a jury will be unable to compartmentalize evidence with respect to each Defendant. At this pre-trial stage of the proceedings, other factors relevant to analysis of a jury's ability to compartmentalize evidence (whether any defendants were acquitted and the adequacy of the trial court's instructions and admonitions to the jury) are not available to assess this argument. Under the circumstances, Golding, Rana, and K. Meo have not satisfied their heavy burden to demonstrate entitlement to individual trials due to spillover evidence and the jury's inability to compartmentalize the evidence.

Accordingly, after careful consideration,

**IT IS HEREBY ORDERED** that Defendants' motions for a bill of particulars [ECF No.

---

[14] Golding, Rana, and K. Meo also cite United States v. Scott, 511 F.2d 15 (8ᵗʰ Cir. 1975). In Scott, the Eighth Circuit noted the "difficulty and the danger faced in the multiple conspiracy cases, where the defendant is part of one conspiracy but not of another, is the likelihood of prejudice affecting substantial rights arising from a 'prejudicial spillover effect' from one conspiracy to another." Id. at 20 (footnote omitted). Because here the Government consents to separate trials of the two conspiracies, the Scott decision is of limited relevance.

140], for early disclosure of Jencks Act materials [ECF Nos. 264 and 301], and for early production of Jencks Act materials and to compel production of statements of non-cooperating witnesses [ECF Nos. 142, 200, and 267] are **DENIED**

      **IT IS FURTHER RECOMMENDED** that Defendants' motions to dismiss [ECF Nos. 139 and 199] be **DENIED**

      **IT IS FURTHER RECOMMENDED** that Defendants' motions to sever [ECF Nos. 141, 186, 198, 257, 263, 266, and 299] be **GRANTED** in part and **DENIED** in part.

      **IT IS FINALLY RECOMMENDED** that:  (1) Defendants Golding, Rana, and Meo be tried together on Counts 1 - 6 only; (2) Defendants Goodwin, Jones, D. McTizic, N. McTizic, and AMS be tried together on Counts 7 - 24 only; and (3) Defendant AMS be tried separately on Counts 25 – 31 only.

      **The parties are advised that they have fourteen (14) days after service of this Order and Report and Recommendation in which to file written objections to it**, unless an extension of time for good cause is obtained.  Failure to file timely objections may result in a waiver of the right to review.  See <u>Thompson v. Nix</u>, 897 F.2d 356, 357 (8th Cir. 1990); 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59.

      A trial date will be set at a later time by United States District Judge Audrey G. Fleissig.

                             *Patricia L. Cohen*
                                _____
                                PATRICIA L. COHEN
                                UNITED STATES MAGISTRATE JUDGE

Dated this 5th day of June, 2018